# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**9**

**KA 09-01287**

PRESENT: SCUDDER, P.J., CENTRA, CARNI, LINDLEY, AND SCONIERS, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                                        MEMORANDUM AND ORDER

CORY D. DANIELS, ALSO KNOWN AS CORY
DESMOND-LAMAR DANIELS, DEFENDANT-APPELLANT.

---

TIMOTHY P. DONAHER, PUBLIC DEFENDER, ROCHESTER (DAVID R. JUERGENS OF
COUNSEL), FOR DEFENDANT-APPELLANT.

SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (ERIN TUBBS OF COUNSEL),
FOR RESPONDENT.

---

Appeal from a judgment of the Supreme Court, Monroe County
(Joseph D. Valentino, J.), rendered April 14, 2009. The judgment
convicted defendant, upon his plea of guilty, of criminal possession
of a controlled substance in the third degree and criminal possession
of a controlled substance in the fifth degree.

It is hereby ORDERED that the judgment so appealed from is
unanimously affirmed.

Memorandum: On appeal from a judgment convicting him upon his
plea of guilty of criminal possession of a controlled substance in the
third degree (Penal Law § 220.16 [1]) and criminal possession of a
controlled substance in the fifth degree (§ 220.06 [5]), defendant
contends that Supreme Court erred in refusing to suppress cocaine
found on his person. Defendant correctly concedes that the police
lawfully stopped the vehicle in which he was a passenger based on a
traffic infraction committed by the driver, and defendant also
acknowledges that the arresting officer lawfully ordered him to exit
the vehicle after the stop. Defendant contends, however, that the
cocaine should have been suppressed because the officer unlawfully
conducted a pat frisk, which resulted in the seizure of the drugs from
his pants pocket. We reject that contention.

It is well settled that "police officers may frisk passengers in
a lawfully stopped vehicle to the extent necessary to guard their
safety, provided that they act on reasonable suspicion that criminal
activity is afoot and on an articulable basis to fear for [their] own
safety" (*People v Goodson*, 85 AD3d 1569, 1570, *lv denied* 17 NY3d 953
[internal quotation marks omitted]). Here, the arresting officer
observed defendant at a bus stop engage in a number of "handshakes"
that, based on the officer's training and experience, were either

hand-to-hand drug transactions or gang signals. The officer was observing the bus stop area because armed robberies, drug transactions, and gang activity had been recently reported to have occurred in that vicinity. According to the officer, when defendant appeared to notice the officer, defendant attempted to hide himself from the officer's view. After about 40 minutes of such surveillance, the officer saw defendant enter a passenger seat of a black SUV-type vehicle, and the driver of the vehicle then made an illegal turn when leaving the scene. The officer thus stopped the vehicle for the traffic infraction and, while approaching the rear of the stopped vehicle, he noticed defendant moving in such a way that he appeared to be either removing something from or placing something into one of his pants pockets. That observation, together with the officer's earlier observations, reasonably caused him to fear for his safety (*see People v Grant*, 83 AD3d 862, 863-864, *lv denied* 17 NY3d 795; *see also People v Shackleford*, 57 AD3d 578, 578-579, *lv denied* 12 NY3d 762). The officer ordered defendant out of the vehicle and, during a pat frisk of defendant for weapons, the officer felt a hard object in defendant's pocket that he thought might be a firearm, but he could not be sure. We conclude under the circumstances of this case that the officer was authorized to "reach[ ] into defendant's pocket[ ] to make that determination" (*People v Wallace*, 41 AD3d 1223, 1224, *lv denied* 9 NY3d 883; *see People v Martinez*, 39 AD3d 1159, 1160, *lv denied* 9 NY3d 867; *People v Howard*, 2 AD3d 1323, 1324, *lv denied* 2 NY3d 800). Before reaching into the pocket, however, the officer asked defendant what the hard object was; defendant's answers were initially evasive, but ultimately he responded, "drugs." That response gave the officer reason to believe that defendant possessed contraband, authorizing a search of the pocket that resulted in the lawful seizure of the cocaine (*see People v Eure*, 46 AD3d 386, 387, *lv denied* 10 NY3d 810).

Entered:  February 8, 2013                    Frances E. Cafarell
                                              Clerk of the Court